We will hear argument first this morning in case 21-234, George v. McDonough. Ms. Bostwick. Mr. Chief Justice, and may it please the Court, our nation's Veterans Benefit System is intended to be strongly and uniquely proclaimant. In this non-adversarial system, Veterans enjoy distinct procedural protections, and review of otherwise final decisions for clear and unmistakable error, or CUE, is one of those unique protections. It prevents the agency's obvious errors from depriving Veterans of the benefits to which their service entitles them. There is no dispute that a clear and unmistakable error has occurred when VA adjudicators misapply the terms of a plain statute, but the government seeks to impose an atextual exception to that general rule. But the agency does not clearly err when it enshrines its misapplication of law in a regulation. That cannot be correct. As this Court has said over and over, an agency regulation has the force of law only if it is consistent with Congress's commands. The government cannot deny this feature of our separation of powers, and its attempts to avoid it are unsuccessful. A VA adjudicator is directed to apply not only the agency's regulations, but also Congress's statutes. When the regulation conflicts with the statute, the adjudicator cannot possibly follow both. But this dilemma created by the agency's own unlawful acts does not stop a later tribunal from identifying and remedying the clear legal error that infected the decision. Nor is this legal error a mere change in interpretation. VA's regulations have long distinguished between genuine legal changes that might warrant updating prior benefits rulings, and legal errors that entitle Veterans to revision of a flawed ruling. Furthermore, what the agency did here could not even colloquially be called an interpretation. VA's presumption of soundness regulation tracked the statute most of the way, and then simply lopped off the end of the sentence, eliminating the second half of VA's two-part obligation. It is not difficult to call that an error, and it is not difficult to say that denying Mr. George's claim based on this plainly invalid regulation was clearly and unmistakably erroneous. I welcome the Court's questions. Before we get to the substance or the merits of that, what is the posture of this case? Is this, would you consider this a direct review? No, this is a, I'm sorry, I'm not sure I'm understanding your question. Is this a direct appeal from the initial decision? This is not a direct appeal, no. This is a claim under the key statute, Section 7111. So do we then review this in the same way that you would normally review a direct appeal, or is there a different standard? The review for Q is, the two different parts of the test, whether there's error and whether it's outcome determinative are reviewed under different standards. Certainly whether there has been a legal error, a clear and unmistakable error, is reviewed de novo. Okay, this term clear and unmistakable error, where does that come from? It comes originally from the agency's regulations. It dates back to the 1920s, and in this and other regulations, when VA uses the term clear and unmistakable, what it means is obvious or manifest. So how was it applied when it was simply a regulation and before it was enacted as a statute? It was applied exactly as we suggest, and I think that is most evident in the look decision that the Veterans Court issued before Congress codified Q into the statute. So it was applied to subsequent rulings that changed the law, as opposed to a mistake involving an extant regulation or law? So it's not a decision that changed the law, right? Wagner didn't change the law. It announced what the law had been at all times, as this Court has explained in cases before. So how was Q applied when it was regulatory? The look, when there's a regulation that violates a statute, is that your question, Your Honor? Yes. Yes, so the look decision is an example of that. There VA's regulation imposed a fault requirement that the statute did not. That's the very regulation that this Court held plainly invalid in Brown v. Gardner. And the look decision, the Veterans Court said, first there was a clear and unmistakable error by VA applying that unlawful regulation, and also there was a further second clear and unmistakable error because even under a different clause in the regulation, the Veterans should have prevailed there. So that's an example. But look is not the only indication that that is how the Q was understood before Congress codified it. You know, the government agrees with us that the Russell decision, the en banc decision from the Veterans Court, is instructive. And what Russell said is that statutory or regulatory provisions extant at the time, if those were incorrectly applied, that's Q. That's exactly what we have here. The statutory provision extant at the time was incorrectly applied. Thank you. You say that Wagner didn't change the law. Correct. Right? But that's not the question. The question is whether there's been a change in the interpretation of the statute. And there surely has, right? So, Your Honor, I don't think that is the question, in part because the change in interpretation language from the agency's regulation was not actually codified by Congress. But more importantly, you have to look at why it wasn't codified. That language appears... I'm sorry, I don't mean to interrupt, but why does it matter whether it was codified by Congress? Because the court doesn't even have to get into it. The statute does not have an exception for changes in interpretation. And what this court is doing is applying the Q statute. And so if the court is looking at the statutory text, that exception isn't in there. But even if the court wanted to look at how VA had applied that language, what function that language was serving, it's not the one that the government suggests. So I want to first draw the court's attention to the entirety of Section 3.105. That is the VA's regulation that governs Q at the regional office level, although now there is a corresponding provision for the board-level Q that we have here. And you can see the 1997 version of that statute at page 16A of the appendix attached to our opening brief. The regulation as a whole covers many things other than Q. 3.105A is what deals with clear and unmistakable error. 3.105B, for instance, deals with difference of opinion, which is a totally different basis for challenging an agency's decision. There are other provisions about severance or reduction of service connection. So the preamble is not, as the government suggests, taking things that would have been Q and carving them out. It is, first of all, saying nothing in 3.105A or otherwise applies when you have a change in law or a change in interpretation of law. More importantly, what it is doing, as we demonstrated this at pages 36 to 40 of our opening brief, and the government doesn't respond, what this has long done is referred to a separate mechanism for changing or revising an otherwise final VA decision. There has long been this distinction between errors on the one hand and changes on the other. The government faults us and says, oh, your view of change in interpretation wouldn't include any errors. That's right. It's not meant to. These are two different things. So if you look at the original, like the 1920s. What sense does that make? Usually you don't exclude things that aren't covered in the first place. So why would anybody have excluded something that, on your view, wasn't an error at all? Certainly, Justice Kagan, if you look at the original regulation, it had all the different mechanisms for challenging an otherwise final agency decision in it. It had cue. It had new and material evidence. It had difference of opinion. It covered when there is discovery to have been fraud in a veteran-seeking service connection, and it told you what to do when there's a change in law or VA issue or an interpretation thereof. And what happened was, in the 1950s, that change in law, change in interpretation, got separated out, put in its own regulation. It's now in 3.114, which tells you what to do when there's been a liberalizing law or a law that cuts against the veterans' favor. And so the reason it matters is you have to understand the words change in interpretation in that context and not in the abstract, as the government wants to do. Of something? I mean, nobody writes this provision in such a way to say change in interpretation is excluded from cue if that change in interpretation has, you know, is not an error in the first place. So I guess I'm struggling a little bit to understand what your view of the history is that would produce that consequence. I think what I'm trying to highlight for the Court, Your Honor, is that that's not what the regulation says. The preamble does not say this is an exception from cue. What it says, and again, this is at 16A Appendix B to our opening brief, the provisions of this section apply except where an award was based on an act of commission or omission by the veteran, or there is a change in law or Department of Veterans Affairs issue or change in interpretation of law or Department of Veterans Affairs issue, bracket, go see Section 3.114, or the evidence establishes that service connection was clearly illegal. And that's not carving those things out of cue. It's carving them out of Section 3.105 as a whole. It's telling you it's a cross-reference. It says if this is the situation you're in, here's where you go look. Now, of course, you still have to distinguish between what falls under cue and what falls under a change in law, change in interpretation. But as we've demonstrated, the latter one has consistently been understood throughout its history to mean a genuine change, a new act of Congress, a switch from one permissible interpretation of the statute to another by the agency. And that's why when you have a change, what you do is you go back and update the decision, and you say, okay, now that this is the law, we're going to give the veteran, adjust the veteran's benefits going forward to comply with that law. What do you do with the General Counsel opinion from 1994 which seemed to suggest or said decisions of the Court of Veterans' Appeals invalidating VA regulations or statutory interpretations do not have retroactive effect in relation to prior final adjudications of claims, which the government cites and the lower court cited as evidence of a common understanding, the Russell case as well as this and other understandings that they say are incorporated into the statute. So how do you respond to that? Certainly. I don't think the government has actually relied on it, at least not very heavily, in its merits briefing, and there's good reason for that. As we've demonstrated, that opinion, first of all, it says that the practice was inconsistent, so it doesn't purport to identify a consistent practice. But moreover, even the inconsistency label is inaccurate. That General Counsel opinion simply misdescribes the whole thing of look, and it doesn't otherwise point to, nor has the government pointed to, any example of the VA or the veterans court precodification saying that when you have the situation we have here, when you have a regulation that violates a statute, that that's not true. There's no counterexample that they've identified. How about the broader context that Justice Thomas was referring to, that what we're talking about here is not direct review but collateral review, and the government says, therefore, the standard for relief should be higher because the implications are going to be dramatic. And the veterans court here, for example, has said that doing this would impose tremendous hardship on the agency, and all of that's the reason for the high bar. So how do you respond to all that? Certainly. I'll address the high bar issue first and then potentially the floodgates problem. It is a high bar. Q is much narrower than direct appeal. On direct appeal, a veteran can raise all kinds of legal, procedural, factual errors that are not available for Q. Can I just stop you there? Yes. Because I'm wondering how high a bar you're saying it is. Anytime a regulation is determined to be an impermissible interpretation of the statute, it seems to me you're saying that's clear and unmistakable error, and if it's not, can you tell me what the delta is? No, I would agree with you, Your Honor. A clear and unmistakable error is one that is obvious or manifest. We do think that any error of statutory interpretation, so long as it affected the outcome, falls within Q, and that makes sense. That's consistent with other high bar statutes. How does that make sense? Because you could have, as here, 20 years later, a regulation that everyone's followed, and then a court finally says, you know, that actually is inconsistent with the statute. You're saying you go back. You don't just do that going forward with a supplemental claim. You go back and retroactively give benefits. For all those years, the agency relied on the regulation. Yes, absolutely. That is what Congress intended in this. Right, because the point is, under the law, under the statute, the veteran was supposed to receive those benefits all along, and so we go back and we put him close to the position he would have been in. There isn't an interest payment. Ms. Plata, can I just follow up on what Justice Kavanaugh said? So it's your position that every single time the agency misinterprets a statute, it's always clear and unmistakable? It seems to me like sometimes you have here, and here, you know, as Justice Kavanaugh said, you had 20 years of an interpretation one way, and you had the Federal Circuit pointing out that it made 1111 look illogical and awkward because it didn't really have to do with the presumption of sound condition. Are all misinterpretations of the statute clear? So we think they are, but even if the court thinks that there are some statutory interpretation errors that wouldn't satisfy you, this is the paradigmatic example, and I want to address what you brought up about the supposed lack of clarity in the statute and the VA's regulation. This is laid out most clearly. It's laid out in Wagner itself. It's also laid out at pages 24 to 25 of the MDLSP amicus brief. Before 1961, VA's regulation tracked the statute. It tracked the statute word for word. It included, it said that the agency had to have clear and unmistakable evidence demonstrating that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such service. That was Section 3.63 of the Code of Federal Regulations in 1956. Congress then codified the presumption of soundness into the statute in 1958, again using that two-part formulation, existed before acceptance and enrollment and was not aggravated by such service. Three years later, VA came back in what was supposed to be simply an administrative repromulgation of its rules, no substantive change, no explanation certainly for any substantive change that might be in there, and they simply deleted the end of the sentence. This is not an interpretation. This is certainly not a considered interpretation. And when Wagner talks about it being somewhat difficult to parse, it doesn't mean that the language is difficult to parse. What Horton Wagner was saying was this seems like a strange thing for Congress to have done for exactly the reason you pointed out, Your Honor, because you're presuming someone was in sound condition, even though you're acknowledging that they entered service with a preexisting condition. But Wagner also identifies the reason for that, and it was because of this long struggle between the executive and the legislature where the executive was playing games, was discharging veterans who had had no conditions noted on their entry to service and then saying, oh, that was a medical issue. And there's also a long history of the VA telling Congress, don't include this aggravation piece of the burden, and Congress saying, no, we want it in there. This was a very intentional act on the part of Congress and no explanation for VA's elimination of that part. How did it happen? I mean, do I have this correctly? And please correct me if I'm wrong. You have a client. Correct. If your client was sound at the time he enlisted, he's not sound now. Correct. So you get some money. Correct. So let's see if he was sound when he enlisted. We have a statute. And the statute says he is sound when he enlisted if A or B. And let's look at it. So he's not going to be sound. I mean, sorry. He is sound unless he's not sound. Unless A or B. Unless he's not sound. Correct. He's sound unless he's not sound. Correct. Now, he is not sound if A or B. Correct. So we'll look at A. A was he had noted there not sound when he signed up. Or that the VA examiner had noted it. Correct. That's not your client. Correct. We're not in A. So he's not sound under A. Correct. So now we look at B. And B says there has to be really good evidence that he was really sick before he was accepted and the sickness was not aggravated by his being in the service. I think I might have misunderstood your A and B. I think it was the... Oh, I probably... That's why I said it because I wanted to get this right in my mind. That if he is not sound when he signed up, no money. No, no, no, no. Wait. Not sound has a special definition. Not sound, there are two situations in which he's not sound. The first says defects, infirmities, or disorder noted at the time of the examination. Right. He's not sound if it was that. Was it that? No. Okay. Now, there's a second way he's not sound. If he really was very sick when he was accepted, but the sickness was aggravated during his service. Correct. So let's see if he fits in B. And the answer is, we're not sure. But maybe we are. But regardless, the reg didn't copy the words and was not aggravated by service. Correct. And that's... So how did somebody make that mistake? It's there in the statute. They write a reg, and then they don't put in the words and was not aggravated by that service. Exactly. Because they're pretending that people were sound at the time they started. But that isn't really true. But we have a pretending. And what it does by pretending is it says, if you were sick as a dog at the time you signed up, we're still going to count you as not sick as a dog if your disease was aggravated by service. So we're going to treat the aggravated people just as if they were really sick as a dog. And what's important... Wait, wait. I can get it mixed up very easily. I hear you. But you have to explain it so clearly that you produce the reaction when I read it the third time, which is, how did they ever not copy those last six words? I really can't say, Justice Breyer. They did not put any sort of explanation in when they changed the regulation in 1961. Have I said it correctly? Because if I haven't, you say it. I believe you've said it correctly. I think it's possible that that's kind of not the issue. I mean, the issue is that there was a regulation that said that. And the question is, what effect that regulation had. And, you know, there's a statute that says the board is bound in its decision by the regulations. Now, actually, even without that statutory provision, that seems like that's just what the board is supposed to do. Now, here there's a statute that lays it out. You're bound by the regulations. You're bound regardless whether the regulations are right or whether the regulations are wrong. So once you're bound by the regulation, how can it possibly be error, let alone clear and unmistakable error, for the board to do what they're commanded to do? Because the board was also commanded to follow the statute. And we're not suggesting that the board should have violated Section 4004 at the time, now 7104. What we're saying is that the board, sure, the board sitting there with both of those directives, it could not comply with both. And so the question is not was the board, was the adjudicator somehow at fault. The question is can the court now look back and say. Well, why isn't that the issue? I mean, you're trying to make this a lot simpler than it actually is. You have one interpretation of the concept of error. Is it objectively erroneous? The government has another. Was there an adjudicative error? And we have to decide which one is the correct interpretation. How do we decide? So I think you start with the text of the statute. A decision by the board is subject to revision on the grounds of clear and unmistakable error. That doesn't say that the board has to have committed clear and unmistakable error. But there are two possible, grant me that there are two possible interpretations. Do you think it's impossible to interpret the term error to mean adjudicative error? It's impossible to use the term that way? In this context, yes, I would say so. What is it about this context that's unique? It's the history of how Q had been understood before Congress codified it. It's the pro-veteran context in which we're in when we understand that Congress intends to legislate for the benefit of veterans. Is that a sound interpretive tool? I think it is, but the court doesn't need to reach it. All right, if we put that aside, then, I don't know what you have left. We have Russell. We have the decisions that Congress looked to that says that when statutory or regulatory provisions, statutory or regulatory provisions, not and, as the government would have it, X'd on at the time or incorrectly applied, that's Q. We have the Fugo decision that's also cited in the legislative history saying that you judge this Q from the perspective of a later adjudicator looking at it. Could you do this? I mean, this is what I think the problem is. There is a statute, and it says any veteran who served in World War II, it says $1,000 bonus will go to any veteran who served in World War II or in Korea, okay? The reg says any veteran will get the $1,000 if he served in World War II. They just left out Korea. Well, I don't know how, but they did. And so someone who served in Korea says read the statute. It says Korea. I served in Korea. Don't I get the money? And that's the issue. And so their point is, well, we had a reg that says World War II. It doesn't say anything about Korea. And they have to follow the reg. And you say. The fact that they had to follow the reg does not absolve them of, does not absolve the decision of being infected with clear and unmistakable error. And this is a natural way of talking about things. If a jury. I'm not sure it is a natural way of talking about things. I mean, suppose this court issues a decision. And it's completely wrong. And it's later reversed. But in the interim, there are many lower courts that follow our decision. Because that's what they're supposed to do. Have they made a clear and unmistakable error? They've made an error. That's what Agostini says. And they've made an error that's correctable on collateral review. And so, remember, there's sort of two questions. Was there error? And what are the consequences? And so something may be an error under our view in many different contexts. But the question then is, okay, what results? Can I pick up there? Certainly. On the question of remedy or consequences. Yes. Let's just pause it for the moment that I agree with you. The Federal Circuit read Q too narrowly. I'm duly influenced by the regulation. And I apologize. But this is my time. I'll count this against my time. And it unduly read it. It didn't read the statute as it's now written. It read it influenced by the background regulation. And to the point where it said even a judicial opinion doesn't qualify in these circumstances. Let's say we agree with you that, yes, that's a clear and unmistakable error. Wagner was one, right? Do we have to reach the question of remedy? Or could we remand it at that point back to the Federal Circuit to decide what the appropriate remedy would be? The remedy in this case, Justice Gorsuch? Yes. No, we're not asking the court to reach that question. It certainly could. And I'm happy to address it if the court is interested. But, no, I think we could say we're not sure if it's a clear and unmistakable error. But one thing we're sure about is that the Federal Circuit analyzed the question incorrectly. Certainly. You could say that when you have a regulation that contradicts a plain statute, that can be cued. I think that it would also be natural for the court to go on to say, and that's what we have here, the question whether that was, for example, outcome determinative in Mr. George's case could be addressed on remand. Are you aware of any Supreme Court case, or any case, because I can't think of one, but there must be someone somewhere, where the legal error at issue was there's a statute, and it says you get money, or something good, if A or B. And then the error that was made was the reg writer left out B. I can't think of a case like that. But there may be one, in which case how the Supreme Court would behave would be quite relevant, because usually, you know, there is sort of two sides to the argument. But I don't know of an error that clear that I can think of. I'm not aware of one, Justice Breyer, that fits that exact scenario. The other side might be. But certainly, you know, it is clear in this court's case, going back to Manhattan General Equipment, to Dixon, that when the agency's regulation contradicts the statute that clearly it is a legal nullity. Counsel, can we go back to your point that this statute is not about adjudicator error. It's about error in the decision. And that's the language of the statute. An error in a decision, not who was at fault for it. Correct? Correct, Your Honor. All right. Am I correct that the veterans, that the regulations say that there is, if there is a material new fact that wasn't before the adjudicator, that that could be grounds for acute? No, Your Honor. That is a separate type of revision. Right. It's a separate type of claim. That's not clear and unmistakable error, precisely because the board didn't have those facts before. But that can reopen a decision. It can reopen a decision. You get prospective. So if a new material fact can reopen a decision, what you're saying is a new, not interpretation of the statute, but a new, a decision that a statute says what it says is no different than a new material fact, correct? It's different in the consequences. When you have a new material fact, you bring a supplemental claim. That's not available when you have what we have here. Mr. George can't file a supplemental claim and say, oh, there's a new material fact. Now, let's go back to the question of clarity. Your position is very easy at Chevron Step 2. If there's a change in interpretation or a new law, then you agree there's no cue, correct? A change from one legitimate interpretation to another, yes. Or permissible interpretation. Permissible, I'm sorry. Permissible, okay. But even in Step 1 Chevron, there are some clear and unmistakable errors. I'm using the language here of the statute, okay? But I do think that there are some Step 1 situations where it's not so clear and unmistakable, meaning in one case this court decided not so long ago, SAS Institute, I was a dissenter. On Step 1, the court said one interpretation and forced dissenter said another. So what do we do with that? This goes back to what Justice Gorsuch raised, which is I can genuinely see some situations where the error is not clear and unmistakable, even under Step 1. So I would say the relevant time period is after that decision issues. Certainly, notwithstanding the reasonableness of your view of how the case should have been decided, once it was decided, if a lower court said, I don't like that, I'm going to follow the dissent instead, that would be a clear and unmistakable error. And that's what we have here. But moreover, even if some of those errors you think would not be sufficiently clear or unmistakable, that's not the case that's before the court. We don't have any disagreement. We have the agency, the government, confessing error and saying, please intallate our regulation. It's wrong. So this goes back to Justice Gorsuch's point, which is if we say some errors can be clear and unmistakable, you decide why this wasn't or tell us why it wasn't. That would be enough for you? That would certainly be a helpful decision. We are asking the court to go further, but, no, that would be favorable. Thank you. Thank you, Counselor. Justice Thomas, anything further? Justice Breyer? I have a couple. Back to the structure of how this works out, the government relies on the regulatory text before 1997 and says that was incorporated into the statutory text and say the longstanding regulatory text to describe the scope of clear and unmistakable error review by reference to the legal understandings that existed when the prior decision was rendered. And I assume your response to that is the regulatory text is not lifted word for word into the statutory text, or am I misunderstanding? That's part one of my answer, is that it wasn't lifted into the statutory text. Part two of my answer is even if it had been, it did not function as an exclusion of things that otherwise would have been cued and say these are no longer cued. Instead, it pointed to a different premise. Okay. And on the Office of General Counsel opinion, we covered that, but you just think that's wrong. The 1994 one? Yes, correct. Okay. And also that Congress did not demonstrate any awareness of it. Okay. On the Congress awareness point, is there evidence anywhere that Congress thought any clear and unmistakable errors would trigger retroactive award of benefits back to the original time? Yes, it's in both cue statutes, but that's the remedy. And then on the floodgates issue, you got cut off before you issued the question. You answered the question about the Veterans Court saying this would impose a pretty substantial strain on a system that is already extraordinarily strained. Your response to that? Yes, another two-part answer, Justice Kavanaugh. First of all, veterans can already attempt at least to bring some form of new claim, in theory a claim under 3.114 if that's what the agency thinks it should be, although there's no clear mechanism for doing so. But a veteran can still attempt to file a claim regardless, and so we don't think there's going to be a sudden flood of claims to the agency. But regardless, these are benefits that Congress wanted these people to have all the time, from the outset, right? These are payments that Congress accounted for and said, this is what we want these veterans to have. And so the fact that, you know, if it creates an administrative difficulty for them to now come back to the agency and right the wrong that was done to them, we don't think that's a problem under Congress's statute. Thank you. Justice Kagan? Can I just follow up on Justice Kavanaugh's first question? And you said you had a two-part answer. The first was it wasn't codified, but let's assume it was codified. And then you said, well, it's only about when you change from one permissible interpretation to another. And even putting aside my prior question of, like, why would that be excluded, but, I mean, just the language, the understanding of change in interpretation, doesn't that encompass both kinds of changes? In other words, there's a change from a non-error to a non-error. There's also a change from something that turns out to be an error to a non-error. I mean, it's still a change. And if you assume that that standard is what was basically understood when they codified this language, why wouldn't this count? It's not a change. It may be a change in the abstract, but that's not the relevant question, right? You have to look at it in context. It talks about changes in law or changes in interpretation thereof, both of those things together. Certainly when there's a change in law, that's not something that... Well, focusing on the change in interpretation, you have a rule that interprets the law. It was wrong, but, you know, they changed it. So that's a change in interpretation. I guess that goes back to the Chief Justice's original question. I think the pairing with change in law matters, right? Because the government's reading of this whole preamble, both parts of it, is that it functions to identify some less serious errors that we're not going to call Q. That's not what it's doing, and one of the ways we know that's not what it's doing is when there is a change in law, nobody would say that the original decision was erroneous. This simply isn't taking errors and carving them out. It's identifying things that were never errors to begin with. That's how this language was used in the regulations dating back to the 1920s. And when Congress codified this concept, this is, I believe it's at page 7 of our opening brief, when Congress put this into the effective date statutes, Section 3010, it referred to a change in an act or a change in VA issue. And so it's making clear that when it's talking about changes in interpretation, it's at the regulatory level, not a judicial decision. Justice Baird. Thank you, Counsel. Mr. Yang? Mr. Chief Justice, and may it please the Court, clear and unmistakable error is not a mere error. Congress separately provided for direct judicial review under an appropriately timed appeal to correct errors like that here. This is quite different. Clear and unmistakable error serves the function of allowing for correction on collateral review with no time limits. And it's a very specific type of error based on the legal context that existed at the time of the original decision, an error that no one from that framework could reasonably dispute. The Board's application of a regulation that Congress itself had required the Board to apply does not qualify. The phrase clear and unmistakable error standing alone suggests a highly unusual error, more egregious than just clear error. And an adjudicator is not naturally said to commit clear and unmistakable error by doing something it's required to do. When Congress enacted Section 7111 using that term, it was already a term of art with an established regulatory meaning. For nearly 60 years now, the regulation governing clear and unmistakable error provided that such error cannot be based on a change in interpretation of the law. And that's exactly what we have here. The interpretation of Section 111 in the VA's regulation changed when the VA and then the Federal Circuit reinterpreted that provision to require more than the regulation did. General Counsel Precedent Opinion 994 specifically held that the invalidation of a regulation is a change in legal interpretation that cannot constitute clear and unmistakable error. That opinion was applied almost a dozen times before Congress codified CUE in 1997. And what petitioners are suggesting is a real radical change here. Notwithstanding the text that eliminated changes in interpretation, they think changes in interpretation is fair game, even though the Board was required by Congress to apply that. We believe that's incorrect and that the tradition going back now almost 60 years supports our position. Mr. Yang, you seem to suggest or argue that Congress codified the prior understanding of the CUE, the regulatory understanding. And there seemed to be some disagreement between you and counsel on the other side about that. But how can we be sure that Congress codified your understanding, whatever that is, of CUE? Well, I think you have two principles, I guess maybe two or three principles. One, this is a highly unusual term, right? This is not a term that exists elsewhere, clear and unmistakable error. But it had existed in the regulations for 35 years before 1997. And when Congress adopts such a very unusual term, this is a term of art from a regulatory context. This Court has repeatedly recognized that it intends to take the old soil up with that term of art. The term had been understood in 1997, as precedent opinion 994 suggests, as well as the Berger decision, which cites that precedent opinion and says that a new rule of law from a later statutory construction case cannot possibly be the basis for CUE because CUE's only concern with the law has existed at the time. Russell, for instance, which is cited in the legislative history, if you use that, but it was also kind of the en banc decision on the subject, said that CUE is where reasonable minds could only conclude that the original decision was fatally flawed at the time it was made. It must be an error in the prior adjudication. And then the relevant error is that statutory or regulatory provisions extant at the time were incorrectly applied. I think all of that points very strongly in one direction. And, you know, I think precedent opinion is a nice way to highlight that. That precedent opinion directly addressed this issue here, and it arose in a very high-profile context. This Court in Brown v. Gardner invalidated the VA regulation concerning liability when an injury is incurred through treatment at a VA facility. It did so just as the Federal Circuit had done so, just as the Veterans Court had done so. While cert was pending in Gardner, the VA issued this precedent opinion because it had to address how do we deal with invalidations of regulations? And it concluded, this is a change in the interpretation of law consistent with the reg. The veteran in Gardner, in their brief, cited precedent opinion 994 to the Court as a reason why that their opinion was right, saying, hey, the VA says this won't apply retrospectively, so don't worry about it. It's just perspective. Berger, the Board applied precedent opinion 994 about a dozen times before 1997 in various contexts, half of which involved invalidation of regs. I mean, this is something that was well entrenched in the system. If I might, counsel. The premise of your argument, I think, is a two-step. First, we have to assume that Congress adopted words from regulation that it didn't choose to adopt. It took some but not all, and we have to take your presumption that that was just shorthand and all the rest came with it. And then second, we have to, I think, understand the regulation about changes in interpretation of law or changes in law to encompass judicial interpretations. And what do we do with Professor Mascot's amicus brief, for example, in which she quite rightly points out that we don't normally think of judicial interpretations as changes in the law. In fact, in Rivers, we said it's not accurate to say that a change in the law, a judicial interpretation of Congress's statute, amounts to a change in the law that previously prevailed. What do we do about that? I think that just misunderstands the question. Professor Mascot just misunderstands the question. The reframing of it is incorrect. We're not saying the law has changed. The law has meant what it always meant. What we're saying is that there was an earlier interpretation. Well, there certainly was by the agency, but there hadn't yet been by any court of law. And I guess that takes me to my second question, is, okay, if an agency interpretation, and I assume that would mean not just a regulation but maybe a litigation position, I don't know. Maybe you can clarify that one. That wouldn't count. No, no, no. Okay. It has to be a regulation. For purposes of my question, counsel, it doesn't matter. Okay. We have a regulation. It's clearly wrong, okay? You think this one may or may not qualify. I don't know. Maybe the Federal Circuit will or won't think it will be. It may never get there. We'll find out. But let's say the regulation, since you want a regulation, says that a certain standard for disability applies in a segregated army differently based on race. That couldn't qualify as a clear and unmistakable error? No, but there are other ways to correct that error. Oh, within the timeline. But Congress couldn't later authorize and didn't later authorize a court of law to correct that clear and unmistakable error. Two different standards of disability based on race. If you're talking about what existed in 1997 when Congress enacted CUE, petitioners argue, this is at page 43 of the brief, that Congress did so knowing that there's direct judicial review to correct errors. I understand that. That's not my question, though. And you know it's not my question. My question is, could a later court correct that or not? And I think on your interpretation, the answer has to be no. No, it could do so in a prospective way. The difference here for collateral review as opposed to filing a supplemental claim which allows for... I'm talking about on collateral review. Well, no, but that's because there's multiple pathways for this error correction to be done. Okay, last question then is, so we agree that that error could not be corrected, I think. That would not qualify as a clear and unmistakable error on your account. It's a remarkable claim, but okay. Last question is, do you agree that we should apply the Veterans' Canon? No, we don't think the Veterans' Canon applies here for a few reasons. First of all... Do you think it's a sound canon? We're not challenging... I would talk about the origin if we'd like to. I had this experience at my last argument with the court. I'm prepared to talk about the origin of the Veterans' Canon this time, and we could talk about it. We're not challenging the Veterans' Canon here, but we think just accepting it as is, it doesn't apply for three general reasons. But just so I've got you square on the record, the government doesn't contest that it's a sound canon. We're not disputing that in this case. We don't have to dispute it in another case, because there's, I think, three reasons why it wouldn't apply. One, Congress used a preexisting term with a meaning, and the fact that that term in the abstract might be capable of some different meaning really doesn't speak to what Congress's intent was here, which was to take up the body of existing regulatory law. Second, clear and unmistakable error can cut against veterans sometimes.  It's not just errors that always correct in favor of the veteran. It's errors that can cut against the veteran. And if you look at the regulation that existed at the time, and this is in Petitioner's Brief, and we produced it back at 17A, severance of service connection applies the same clear and unmistakable error standard. Now, it's different, and there's some more protections, but the basic standard cuts both ways. So there are some contexts where some veterans might be on the opposite end of a clear and unmistakable error case, and Congress, when you have that kind of one set of veterans and another, it doesn't make sense to apply the veterans' payment. Third, this is a reticulated scheme where there's a balance of policy interests with the different avenues that Congress provided. Congress provided for direct review. That's a generous 120-day appeal period. But it also provided that if you don't appeal, there's finality in the board's decision. It did provide... Except counsel, it created a whole lot of exceptions to finality, and this queue is one of them. This is one of them. So, please let me finish my question, okay? This is one of them. We know that Congress writes statutes giving exemptions that it doesn't give in other areas because it does favor veterans. And whether you believe the veterans canon applies or not, the one thing one can say is, you read it the way Congress wrote it. And if it wrote it in favor of veterans, you don't look for reasons to exempt veterans from the coverage it gives. So, going back to Justice Thomas' question, I've read all the cases that you've given me, whether it's Berger, Wagner, Love. I do know that Love is a little bit unclear, but it favors petitioner's side more than it favors yours. The veterans court there said there were two queues. It ended up deciding that the second queue was more the ground for its decision, but it read it contrary to what you're saying it said. None of those other cases you've cited dealt with a situation identical to this one. They dealt with situations in which there were changes in law or changes in permissible regulatory interpretations. The only thing that favors you is what Justice Kavanaugh pointed to, which was that veteran counsel's decision. But there is no evidence that Congress knew that when it adopted this queue standard. And that veterans counsel's decision admits that there are some disputes about what this means. And so I don't take it as much. It's telling us what it thinks it means, but I'm not sure that tells me what Congress thought it meant because it never referenced it. Having said all of that, I don't understand how you can claim that clear and unmistakable error in the decision made in the statute, in the interpretation of the statute, even if it was compelled by the regulation at the time. It's disjunctive. Error in the statute or error in the regulation. This is an error in applying the statute. So why isn't that clear and unmistakable? Or potentially clear and unmistakable? Well, there's a lot baked into that question. Let me just try tackling some parts of it. I think you were referring to Look, which you think may favor the other side. Look, remember, was a 1992 decision. It was specifically addressed in precedent opinion 994. It's never been cited ever in 30 years by a court for its clear and unmistakable error analysis that you think might favor the other side. And that's because it just wasn't presented. We think that precedent opinion, which was cited in Berger, basically followed the same type of principle about new interpretations of law by courts don't count. That was what existed. It existed in veterans court board decisions, explicitly following the precedent opinion. And there's no indication that Congress was aware of any cases except for Russell and Fugo. It didn't cite all these veterans court opinions. The precedent opinion is not only did it exist, its holding is published in the Federal Register. It's at 59 Federal Register 27309 expressing that holding. You know, there's no reason to think that Congress, given the high-profile context in which precedent opinion 994 arose, including a case in this court, the one to invalidate a VA regulation, I believe, for the first time on judicial review, that Congress would have thought that there was anything but this would apply. Specifically, I mean, there's no reason to think Congress would have thought, look, there's a better case than... Well, I don't see how they got this. Look, I'm thinking, maybe I'm the only one thinking, if it's the only, have to address this quickly. But you make two assumptions. Assumption one, the words are clear, unmistakable. It doesn't say evil. It doesn't say the worst error ever made. It doesn't say confusing. It says clear, unmistakable, OK? Assume a second thing. And the second thing is what I say to groups, which you're lucky if you haven't heard it, but I say I'm not one that pays a lot of attention to the words. I do pay attention to them more than you think. And if it says carrot, you cannot say that that means a rabbit. A carrot does not mean a rabbit, and you have to follow the statute. OK, now that's background. Now, why can't I write this opinion? It says clear, unmistakable. Everybody wants this court to define what's clear and unmistakable. I don't want to define it. I'll just tell you this. This is the most clear and unmistakable error I've seen in 40 years. I can't think of another one. Now, what is it like? I've already given you two examples. It's like a statute that says you get $1,000, veteran, if you served in the Philippines in World War II or Korea, and they leave out Korea. Or to put it in these terms, it says you count as sound. I'm not saying you are sound, but you count as sound, unless A or B. A happens to be that they noted you weren't sound, and they didn't do that here, so let's look at B. And B says you weren't sound, you were sick at the time, but the government has to absolutely prove that the service didn't aggravate it. Boy, that sounds like the Korea part, because they left that out, just like they left out Korea. And so why I say this is clear, unmistakable, is the person who ever did this just didn't write that into the reg. Very simple. He had no reason for not writing it into the reg. Even the government, with its tremendous resources in the SG department, has not been able to find a reason why they would have left that out. It was an accident. But it's sure clear, and it's sure unmistakable. Now, what's wrong with that opinion? I've got four things to discuss. I mean, you've talked about the standard, and then you've talked about the statute. Talk about it as you wish, and as briefly as you wish. I don't know. The application here, I think we addressed in our brief, and I'll basically leave it there, but I don't think this is at all a clear resolution of the question. There are two statutes that have involved aggravation. This statute itself was internally self-contradictory. You don't look to whether you were in sound condition at the time of entry by whether, assuming that you weren't, there was aggravation after. So there's a second statute involving aggravation. They construed the two at the same time. You know, we now conclude that the better interpretation is the one that we currently have, but I don't think that it's in any way clear, because oftentimes when you find statutes that don't make any sense... Well, Mr. Yang, just assume, with Justice Breyer, and just assume that the regulation was clearly and unmistakably wrong. The regulation was clearly and unmistakably wrong. Now the question is, is the decision based on that regulation clearly and unmistakably wrong? And the premise of Justice Breyer's question is that once you answer the first, you answer the second as well. I think the premise of your argument is that there's a leap from the first to the second, but you have to justify that leap. So how would you justify it? I think we look at the text, 7111A. We look at the way that it had been interpreted in Russell, which focuses on the adjudicatory error. And so let me start with that. 7111 talks about a decision by the board is subject to revision for clear and unmistakable error. It's the decision that's the focus. The next sentence says, if there's such an error... Exactly. It's an adjudicatory. The prior decision, that is, the adjudicatory decision, shall be reversed or revised. It's not the regulation. That's a separate thing done by a separate entity. Secondly, Russell explained that the CUE review... Why is it important that it's done by a separate entity? I mean, you're suggesting the board did nothing wrong here. And that's right. The board did nothing wrong here. But the VA as a whole, let's assume, with Justice Breyer, did do something wrong. Why is the focus on the board's decision rather than the VA decision-making as a whole? Well, I think that, you know, why Congress wouldn't have wanted that to... The focus has always been on the board. If you look at Russell, Russell talks about CUE being reasonable and could only conclude that the original decision was fatally flawed at the time it was made. You look to the regulations and statutes extant at the time to decide that. And the error must be in the prior adjudication such that the prior decision is revised. Oh, that's interesting. But the statute speaks about the secretary making a clear and unmistakable error, right? Uh... I mean, the statute. That's a different statute. There's two provisions at issue here. Yeah, but... Right? 5109A, I believe, is what you're talking about. Yeah. That says the decision by the secretary under this chapter. Yeah. Right? That... If you look at their brief, pages 5 to 6, they explain that that is the regional office because that is a delegated decision to the regional office, not the secretary. That's right. But the second sentence of that is if the evidence established the error, the prior decision shall be reversed. That's the decision... Decision, though, is of the secretary throughout this whole section. The only decision... Right? The only decision that we have... Decision by the secretary, section A. But, yes, although that's true with the board. The board issues the decision... It's all delegated authority from the secretary, though, right? The board exercises delegated authority, I assume, from the secretary. Well, it's statutory authority, but yes. Okay. All right. I guess I'm still stuck where Justice Kagan is, and I'm not sure I understand why it makes a difference. It may be that the board's decision was justified in some sense. It wasn't, you know, extra-legal. It tried to comply with the regulation. It had two competing statutory commands, one of which it obeyed, one of which it disobeyed, however. I mean, it clearly and unmistakably erred on the application of the veterans' benefits, but it sought to abide by the rule that it has to follow its regulations. It had two competing statutory claims on it, and it did its best job. I don't doubt it's, you know, in some sense justified, but its decision, we would still say, as we do with lower courts, I think, who are trying and struggling to interpret a statute but get it wrong, we would say it's clearly and unmistakably wrong. Well, that's a conclusion. I mean, the question is, what is clear and unmistakable error, right? And clear and unmistakable error... I thought we had agreed for the purposes of this line of questioning that we're taking as given that the interpretation, the regulation was clearly and unmistakably wrong, but if you want to make that argument... Oh, no, no. I mean, I didn't understand. There's a distinction, though, between the regulation and the adjudication, right? And the decision that's relevant is the adjudicatory decision. I understand that. My question, though, was, counsel, the adjudicatory body has two options. One, follow a law that's pretty clear on its face. It's inconsistent with the regulation, all right? Another law that says follow the regulations. Okay, it has to choose. I don't fault it. It chose one rather than the other, okay? It might in some sense be understandable, justified maybe even, but why can't that be fairly described as clear and unmistakable error to the extent it rests on, its analysis depends upon, a clear misinterpretation of the statute as Justice Breyer outlined? We would, for example, say, with respect to lower courts, if this came through the judicial system, say, we know our friends on the Tenth Circuit were trying their best. We know they did their absolute level best, but we interpret the statute to plainly mean something very different. Their error was clear and unmistakable. I don't think that would be a natural way to say it. You would say that there was error. And we say all the time at what is sometimes called Chevron Step One that the plain language of the statute forbids the lower court's opinion. Right, but... Clearly and unmistakably, I'm sure I can find those words. Justice Gorsuch, I think, you know, talking about Chevron Step One, let me give you an example. The court has recently decided a case called Babcock. It involved dual-status military technicians. You were the lone dissenter on the statutory construction case. I must have been wrong. I don't think you were clearly and unmistakably wrong. You found persuasive the Eighth Circuit's decision in a case called Peterson, which was a Chevron Step One decision. It came before all the other courts that had decided against it. And then in that context, the Social Security Administration had to decide, like, what do we do with Peterson before the court reversed or abrogated Peterson? There's a case called Mitchell v. Coven, 809 F. 3rd, 1050, where the Eighth Circuit says, no, no. You know, you have a provision about change in interpretation of law. You didn't have to apply our decision in Peterson retroactively with respect to closed SSA claims. Perspectively, you do it, but not retroactively. This is the same type of thing here. There are remedies. The remedies are multitudinous. You can appeal. If you don't appeal, and if you appeal, then you can get, you know, back to the date of your application. If you don't do that, there's a very low bar for a supplemental application. It just has to be new and relevant evidence. Cumulative, just to put some evidence that's relevant, right? You get a new adjudication under the new understanding. If all else fails, you can seek secretarial relief for administrative error. But what we're talking about here is something very different. Collateral review going back here, it's back to 1977, right? Where the provision had existed for 25 years before anyone had any problems, because the provision's an unusual provision. So did Congress intend to add an entirely new claim to dig up decades' worth of claims? The VA estimates that there right now are about 16 million finally denied claims for living veterans. Now, each veteran can have more than one claim because they can have their knee, they can have their, you know, the back, they can have PTSD. But there's about 16 million of these claims. If you start saying, well, we're going to go back, and there's been a number of regulations that have been invalidated over time. We're going to go back indefinitely where the VA is already adjudicating 1.4 million claims a year. You're going to add a new claim. Now, maybe they can bring prospective claims, but retrospective claims on top of that? Congress had reason to be cautious here, because when you add to the system, you add new claims that didn't exist before in the regulatory scheme. You threaten the timing of everything else. So we think that our interpretation, I mean, first of all, if there's not a binding interpretation, our view is you need to have a binding agency interpretation that's changed. Board decisions aren't anything. They're not precedent. They don't decide. You know, they're not binding. We can't appeal them. But if you have a regulation, if you have a regulation that Congress required the board to apply in its adjudication, so the decision of the board is the same decision that we're talking about on review. The decision of the board is bound by the regulation. In that context, you know, it may well be error. You can correct it on direct review. We don't think it's clear and unmistakable error on collateral review with an unlimited timeline. And your argument about what Congress thought as opposed to the structure, and I understand your structural argument about collateral review, and that's different, and this language is transplanted. Just want to make sure, I think I asked this question imprecisely to Ms. Boswick, but was there any congressional suggestion that this situation, in other words, a reg that had been in existence before is later declared invalid would itself be the trigger for retroactive benefits? Are you aware of anything one way or the other? Neither way. We simply are inferring from the state of play that existed in November of 97 when Congress enacted the statute. And don't you think that's odd? I mean, we can't figure that out now, but wouldn't this have been a big issue? Boy, this is going to be a big hit for the reasons you say. Seems like it would have been. I mean, you know, we can't point to something and Congress often is very terse, and some members of the court don't even look to legislative history, but, you know, what I can say is the context in which this issue arose in Opinion 994 was a significant one. It was while cert was pending in Brown v. Gardner, which is the first decision of this court, I believe, on direct review to invalidate a reg of the VA as inconsistent with the statute. Ms. Boswick said you didn't really play that up so much in your brief. Well, we didn't. We cited it as being followed by Berger, and we made a, you know, certainly the Court of Appeals relied on it, and we relied on it earlier. You know, we had to make some judgments about what to argue, what to fit into the brief, and things have evolved. So I guess you're saying, just to summarize what you're saying, I think is if Congress had wanted the retroactive benefits for this kind of situation, we would expect some indication somewhere, or is that wrong? No, I don't know. I'm not sure that you need a clear statement. I think what the presumption is is when Congress takes this novel term, clear and unmistakable error, that doesn't exist elsewhere and exists in the very context that Congress is codifying it, that it is presumed to take the old soil with it, and it doesn't require that Congress says, oh, yeah, we like this bit of grass and we like this bit of soil. You just take the whole thing writ large. She, Ms. Boswick, says the old soil's not all in your favor, I guess. And therefore, you go back to trying to parse the terms rather than just taking the phrase as a whole and picking up what comes with it. I think the only thing that they have for that is the Look decision, which Justice Sotomayor was discussing earlier. So you say general counsel opinion, Russell... General counsel decision was after Look. Look has never been cited ever since it was issued 30 years ago for its clear and unmistakable error principle. If you thought that there was some tension between the precedent opinion and Look, someone would have brought it up. But Look never had the occasion to decide if it would be clear and unmistakable error if the agency was bound by a regulation that it applied faithfully, because in that case, the agency didn't apply the regulation properly and the court said, well, the board is not free to ignore the regulation and therefore the error exists under the correct application of the law as it previously existed at the time. Look just doesn't resolve, I think, the answer for petitioners. And when you look more broadly, look at 994, you look at the board decisions following 994, I think Congress can be assumed to have brought that soil up with the term. Thank you, Mr. Yang. Thank you. Justice Thomas, anything further? Justice Breyer? Justice Kavanaugh? Two questions. So you mentioned a third path. There's direct review, which gets you prospective benefits. There's the collateral review, that if it applies, can get you retroactive benefits. You say it doesn't apply here. And then you said secretary review. There's actually four types of things. Okay. Direct appeal gets you benefits all the way to the beginning. I meant the supplemental claim. Supplemental claim, right, with very low bar of just new relevant evidence. That gets you prospective. Sometimes it's retrospective up to a year if there's a new law. But it's limited in its retrospectivity. My question is really about the secretary review. Is that a real thing? It doesn't come up a lot. It's left in the secretary's discretion. So the secretary could simply decide not to act on it. And then on the hardship question, it's tough for us to figure out this. And this happened yesterday, too. How much of a hardship will this really be in the Veterans Administration Veterans System? So to the extent you can document this in 30 seconds to 60 seconds, I would appreciate hearing what you think would happen. Well, it's hard for us to document it, too. But I'll give you a few hints what we think the issues might be. There's no time limit on this. If the veteran or survivors are alive, it goes back indefinitely. You're looking also to past now decisions. Remember, this was a 2003-2004 that was only raised in 2014. Past decisions that invalidate regs. We haven't done a comprehensive search, but we've identified about 14 or 16 decisions that invalidate regs in various contexts. That can have a cascading effect when we're talking about 16 million finally adjudicated denied claims. We don't know what subset that is, but it could be substantial. And you're looking prospectively, right? You're looking prospectively at what might happen in the future with respect to future decisions and future regs. And our point is that Congress, when it sat and it looked at this in 1997, it already had before it direct review, right? You would expect, if there are errors like this, like a systemic error, someone's going to bring it up on review. Congress provided for that. And if you don't, if you forfeit your rights, Congress provided for finality in VA board decisions with a very narrow exception that piggybacked on top of a very narrow application of the exception through the regulations. Thank you. Mrs. Baird? Thank you, counsel. Just one last. Of those 14 cases, counsel, of those 14 regs that were invalidated, how many were on Step 1 and how many on Step 2? I'm sorry. I just don't know. But I will tell you that I don't think that there is much of a distinction here because the theory that they have for Chevron Step 1 is it's ambiguous, therefore you could not reasonably conclude otherwise. But the theory on Chevron Step 2 is that the agency did not reasonably construe the ambiguity. So if you lose on Step 2, it's also because you've acted unreasonably under their theory. So I don't think there's really any real distinction. Their theory, I think, as my friend suggested, it covers all errors, all interpretive statutory errors, all invalidations of regs, and that is a sea change for a statute that has existed in its present form for almost 60 years. Sorry, regulations and then the statute for almost 60 years. Thank you, counsel. Rebuttal, Ms. Bosworth. Thank you, Your Honor. I have a few brief points I'd like to make in rebuttal, but first I would like to correct a handful of mischaracterizations from the government. First, my friend on the other side spoke a great deal about the availability of direct review. Of course, direct review was not available to Mr. George nor to any veteran until 1988. There are many veterans who received clearly erroneous decisions and did not have the ability to challenge those at the time. Second, in speaking about supplemental claims, there was a suggestion that one could bring such a claim with cumulative evidence or with a legal error. Neither of those is correct. It is available only for new and relevant evidence, formerly known as new and material evidence. So I think that's just a mischaracterization of that form of relief. And third, in the Mitchell case that my friend on the other side referred to, the primary holding there was that mandamus was unavailable because reopening in the Social Security context is a discretionary remedy, and, of course, mandamus is not available to order relief that is not mandatory. The reference in that decision to the change in interpretation language is extremely obscure and sheds no light on what that court was thinking, let alone what Congress thought in 1997, long before that decision issued, when it looked to the Social Security context as an analog. There was a reference to clear and unmistakable errors as a highly unusual term. I don't think that's correct. It's a term that's used, as your honors might have noticed, in multiple contexts in veterans' regulations, for example, in the other regulation that's at issue in this case that talks about clear and unmistakable evidence. And VA, in that clear and unmistakable evidence regulation in 1956, this is Section 3.63D, had an explicit definition. Clear and unmistakable means obvious or manifest. That's exactly what we argue it means in the clear and unmistakable error context as well, an obvious or manifest error that's consistent with all of the precodification case law, including Russell, which talked about errors of statutory or regulatory application. But it's also consistent with how this standard is understood in other contexts and other demanding standards. For example, the clear error standard. When you have an error of statutory interpretation, that is a clear error. That suffices. Likewise, in the mandamus context, the first prong of the mandamus test is that a petitioner must have a clear and indisputable right to the writ, and an error of statutory interpretation counts. Among other places you can see that in this court's decision in T.C. Heartland. Likewise, an abusive discretion review, violating a statute is an error of law that counts as an abusive discretion, and law of the case also uses the clearly erroneous formulation and includes statutory error, as we see in the Christensen case. So even though this does have an established meaning in the veterans context, it's a meaning that's consistent with other demanding standards of review. On reference to change in interpretation, even if we think that it's relevant here and that it was somehow brought into the statute, they haven't identified any instance of calling what we have here, namely a judicial ruling saying this regulation was plainly invalid, or even anything that came before was plainly invalid, calling that a change in interpretation. In fact, this court, in Monell, when it overruled Monroe and found stare decisis met, referred to the prior decision as an error. There was a quote to the earlier Girouard decision, which likewise involved overruling three of this court's prior precedents, and it deemed those precedents not a correct statement of the law. So we think it is actually quite natural to understand this kind of change as identification and correction of an error and not merely a change in interpretation. I want to address also the binding argument, this idea that there's something special about a regulation because a regulation binds the board. That's not quite accurate either. If you look at Section 7104C, which is the provision they rely on, the board is not just bound by regulations and by statutes. It's also bound by, for example, Presidential General Counsel opinions. And so the effect of the government's argument is that if the General Counsel issues a Presidential opinion that is contrary to a statute and the board relies on that Presidential opinion in denying benefits, that can't be cued. It can't ever be cued, and I think that's also an important thing to understand, right? The government's position would exclude all decisions that are based on regulations no matter how wrong they were from cue, and there's no reason for this categorical exclusion. Thank you, Counsel. The case is submitted.